UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sylvia Kaszubski,                                              Case No. 3:23-cv-1904

               Plaintiff,

         v.                                                        MEMORANDUM OPINION
                                                                      AND ORDER

Hanna Jerik, *et al.*,

               Defendants.

## I.      INTRODUCTION

Plaintiff Sylvia Kaszubski, proceeding without the assistance of counsel, filed suit against Defendants Hanna Jerik, Terry Town, Donna Seed, and Sarah Anjum, asserting claims under state and federal law. (Doc. No. 1); (*see also* Doc. No. 1-1). Jerik was a case worker with Lucas County Childrens Services ("LCCS") involved in child custody proceedings before the Lucas County Juvenile Court ("Juvenile Court") that ultimately resulted in the permanent removal of Kaszubski's two children from her custody. (*See* Doc. No. 1-1 at 1; Doc. No. 16 at 3). Town was the guardian *ad litem* for one of Kaszubski's minor children, while Seed was the interim executive director of LCCS during a portion of the custody proceedings. (*See* Doc. No. 1-1 at 1; Doc. No. 16 at 3). Anjum was retained as Kaszubski's attorney during the custody proceedings. (*See* Doc. No. 1-1 at 1; Doc. No. 18-1 at 1).

Jerik, Town, and Seed (the "LCCS Defendants") moved for judgment on the pleadings on all claims, (Doc. No. 16), as did Anjum. (Doc. No. 18). Kaszubski requested an extension of time in which to respond to the motions, but she ultimately did not file a brief in opposition and the

deadline to do so has passed. (*See* Doc. Nos. 20 and 21). After the deadline passed, Anjum filed a supplemental brief arguing her motion should be treated as unopposed. (Doc. No. 22). For the reasons stated below, I grant Defendants' motions.

## II. BACKGROUND

In April 2021, LCCS filed a complaint in Juvenile Court after it received several "referrals" concerning Kaszubski's children. *In re C.S.*, 2023-Ohio-1662, 2023 WL 3493205 at *1 (Ohio Ct. App. May 15, 2023). One referral reported that Kaszubski's son had been physically and sexually abused in the past,[1] while two other referrals alleged Kaszubski and a male friend had become unresponsive after using illegal narcotics while the children were in the home. *Id.* The Juvenile Court held an emergency hearing and, at the conclusion of that hearing, entered an order temporarily removing Kaszubski's children from her custody. *Id.* A few months later, the Juvenile Court ordered that Kaszubski's daughter remain in the temporary custody of LCCS and that the father of Kaszubski's son be awarded legal custody of the boy. *Id.* at *2.

On December 15, 2021, Kaszubski was placed on a case plan, which sought to address Kaszubski's "mental health, substance abuse, and parenting issues" with the goal of returning her daughter to her custody. *Id.* On August 31, 2022, LCCS filed a motion to have Kaszubski's daughter placed into LCCS's permanent custody, arguing Kaszubski "failed to substantially remedy the conditions that warranted" her daughter's removal from her custody, including continued substance abuse as well as failure to abate physical hazards such as broken glass and dangerous tools. *Id.* LCCS also asserted Kaszubski did not consistently attend group and counseling services or regularly visit or communicate with her daughter. *Id.*

---

[1] The state court documents Jerik, Town, and Seed attached to their answer do not indicate who allegedly abused the boy. (*See* Doc. No. 15-3 at 2).

The Juvenile Court held a hearing on the motion on December 7, 2022. Among the witnesses at that hearing were Jerik, Town, and Kaszubski. *Id.* at *3-5. Following the hearing, the Juvenile Court concluded it was in the best interest of Kaszubski's daughter to terminate Kaszubski's parental rights and to place her daughter in LCCS's permanent custody. *Id.* at *6. That decision was affirmed on appeal. *Id.* at *9.

Kaszubski alleges that, during the period in which she was on a case plan, Jerik and Town coerced her into signing "legal documents and agreement[s]" by telling her that if she "did not agree to sign [her] Parental Rights away for [her] son," they would ensure her son was present for every court appearance so that he would learn traumatic details about his conception, birth, and childhood. (Doc. No. 1-1 at 2). She also asserts LCCS ignored her reports that her daughter was physically and sexually abused by a foster parent. (*Id.* at 2, 5-7). She contends that she received a letter from the "Governor['s] office" on May 17, 2022, "expressing concern and wanting more information" about the abuse allegations. (*Id.* at 2-3). Additionally, Kaszubski accuses Jerik and Town of "unprofessional conduct" that "caused the destruction [of her] . . . safety and otherwise productive lifestyle . . . ." (*Id.* at 3). She further alleges Town and Jerik told her that her place of business "must be closed," though there is no indication as to whether Kaszubski claims to be an owner or an employee of the business. (*Id.*).

Kaszubski also alleges that Jerik was changing Kaszubski's dosage of her prescription medication and that Jerik filed the motion to remove Kaszubski's daughter from her permanent custody in retaliation for Kaszubski's complaints about the medication changes. (*Id.* at 4). She also accuses Jerik of forging Kaszubski's signature. (*Id.*). Further, Kaszubski asserts LCCS forced her to endure revictimization of earlier traumatic events and also refused to allow her to seek medical care for a hernia. (*Id.* at 11-13).

3

Kaszubski's allegations against Seed and Anjum are less clear. She asserts Seed's actions have "been horrendous and life altering to say the least" and argues there is a lack of appropriate social worker standard and that the LCCS was involved in unethical situations and had inadequate proceedings. (*Id.* at 8-9). But Kaszubski does not identify what actions Seed may have taken and how those actions may be connected to her complaints about her case. (*See id.*). Kaszubski appears to accuse Anjum of various acts of misconduct during the course of her legal representation of Kaszubski. (*Id.* at 9-11).

Kaszubski asserts the Defendants' conduct violated her constitutional rights, 18 U.S.C. § 242, Ohio Revised Code §§ 111.42, 111.43, 111.99, 2305.11, 2919.22, 2921.45, 2930.07, 2945.67, 2953.08, 3109.04, 3149.19, 3109.401, 5103.03, 5103.15, Ohio House Bill 262, and various provisions of the Ohio Administrative Code. She also appears to seek permanent custody of her children. (*Id.* at 13).

### III.  STANDARD

Motions for judgment on the pleadings filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). A court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While pleadings from *pro se* litigants are "held to less stringent standards," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), those pleadings still must demonstrate sufficient factual matter that, when taken as true, states a claim which is "plausible on its face." *Twombly*, 550 U.S. at 570.

4

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered" in deciding a Rule 12(c) motion, as may "matters of public record." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007). If a written exhibit is "'inconsistent with the allegations of the complaint, the exhibit [generally] controls.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012) (quoting *Mengel Co. v. Nashville Paper Prod & Specialty Workers Union, No. 513*, 221 F.2d 644, 647 (6th Cir. 1955)).

### IV. ANALYSIS

#### A. FEDERAL CLAIMS

##### 1. 18 U.S.C. § 242

Kaszubski's complaint references § 242, though she does not raise that statute again in her supporting documentation filed along with her complaint. (*See* Doc. No. 1 at 3). That statute is the criminal counterpart to 42 U.S.C. § 1985 and does "not provide for private civil liability." *Rives v. Univ. of Tennessee*, No. 24-5336, 2024 WL 5103829, at *6 (6th Cir. Dec. 13, 2024). *See also Chappel v. Adams Cnty. Children's Servs.*, No. 23-3526, 2024 WL 4601467, at *4 n.2 (6th Cir. Oct. 22, 2024) (noting § 242 does not provide "a private right of action") (citing *Booth v. Henson*, 290 F. App'x 919, 921 (6th Cir. 2008) and *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)). Therefore, I dismiss this claim against all Defendants.

##### 2. 42 U.S.C. § 1983

Section 1983 permits a plaintiff to sue a person acting under color of state law who has caused the plaintiff to be subject to "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A § 1983 plaintiff must identify which defendant's acts or omissions caused the alleged deprivation of her constitutional rights. *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

5

"[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Balanced against this right is "[t]he government's interest in protecting children[, which] is just as compelling as the parents' 'abstract fundamental liberty interest in family integrity.'" *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 636 (6th Cir. 2007) (quoting *Kottmyer v. Maas,* 436 F.3d 684, 690 (6th Cir. 2006)). A state employee violates parents' right to make decisions concerning their children if the employee "remove[s] children from their parents' care without a valid court order and without either parental consent or pre-removal process." *Bambach v. Moegle*, 92 F.4th 615, 623 (6th Cir. 2024).

Kaszubski alleges Jerik and Town coerced her into signing away her parental rights for her son. (Doc. No. 1-1 at 2). She also asserts Jerik filed a motion to have her daughter placed in LCCS's permanent custody in retaliation for Kaszubski's complaints about Jerik's behavior. (*Id.* at 4). But "[u]nder Ohio law, the juvenile court decides whether to grant permanent custody to [a county children's services department] or to grant legal custody to a relative." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (citing Ohio Rev. Code §§ 2151.353(A)(3) and 2151.414(A)(1)). As the *Pittman* court recognized, Ohio assigns to juvenile courts "the ultimate [decision-making] power with respect to placement and custody, [and] it alone could deprive" a parent of the parent's Fourteenth Amendment substantive due process right. *Pittman*, 640 F.3d at 729. I conclude Kaszubski fails to state a plausible claim for relief against Jerik and Town in connection with the Juvenile Court's removal of her children from her custody.

Kaszubski also makes a variety of allegations about Jerik and Town did or failed to do while Kaszubski was on a case plan. (*See* Doc. No. 1-1 at 3-8). But Kaszubski has not identified how any of those alleged incidents violated her constitutional rights. Therefore, she has not stated a plausible claim for relief under § 1983 arising from those incidents.

I also dismiss Kaszubski's § 1983 claim against Seed. She has alleged only that "[t]he actions of Donna Seed, Lucas County children services [have] been horrendous and life altering to say the least." (*Id.* at 8). But Kaszubski is required to allege which of Seed's acts or omissions caused the alleged deprivation of her constitutional rights. *Rizzo*, 423 U.S. at 371. She has not done so.

Finally, I dismiss Kaszubski's § 1983 claim against Anjum because she is a private attorney who is not subject to liability under § 1983. *See, e.g.*, *Baker v. Smith*, 72 F. App'x 339, 341 (6th Cir. 2003).

**B.    REMAINING CLAIMS**

Kaszubski's remaining claims involve allegations of violations of state law. When a district court has original jurisdiction over a case due to the presence of a question of federal law, the court may exercise supplemental jurisdiction over claims arising out of state law as long as those claims are part of the same case or controversy as the federal question. 28 U.S.C. § 1367(a). When the court "has dismissed all claims over which it has original jurisdiction," the court may decline to exercise supplemental jurisdiction of the state-law claims and dismiss them. 28 U.S.C. § 1367(c)(3). "[I]t is appropriate to decline the exercise of supplemental jurisdiction where state law claims substantially predominate over federal claims." *Morrison v. Brookstone Mortg. Co., Inc.*, 415 F. Supp. 2d 801, 808 (S.D. Ohio 2005) (citing *Gaines v. Blue Cross Blue Shield of Mich.*, 261 F. Supp. 2d 900 (E.D. Mich. 2003)). *See also Marshall v. Portfolio Recovery Assocs., Inc.*, 646 F. Supp. 2d 770, 776 (E.D. Penn. 2009) (dismissing without prejudice plaintiff's state law claim after granting judgment on the pleadings as to all claims over which the court had original jurisdiction).

Each of Kaszubski's remaining claims arose from what she alleged to be the violation of her rights during child custody proceedings before the Lucas County Juvenile Court and are best suited for state court. I decline to exercise supplemental jurisdiction over Kaszubski's state law claims and dismiss those claims without prejudice.

## V. CONCLUSION

For the reasons stated above, I grant the Defendants' Rule 12(c) motions for judgment on the pleadings as to Kaszubski's claims under federal law. (Doc. Nos. 16 and 18). I decline to exercise supplemental jurisdiction pursuant to § 1367 over her state-law claims and I dismiss those claims without prejudice.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge